Maria A. Savio (MAS 7756)
msavio@grr.com
Gottlieb Rackman & Reisman, P.C.
270 Madison Avenue
New York, New York 10016
212-684-3900

Local Counsel for Plaintiffs
Moroccanoil, Inc. and
Moroccanoil Israel, Ltd.


William C. Conkle
  *w.conkle@conklelaw.com*
Mark C. Riedel
  *m.riedel@conklelaw.com*
Scott A. Hampton
  *s.hampton@conklelaw.com*
(Pro Hac Vice application forthcoming)
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403-2351
Phone: (310) 998-9100 • Fax: (310) 998-9109

Counsel for Plaintiffs Moroccanoil, Inc.
and Moroccanoil Israel, Ltd.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOROCCANOIL, INC., a California corporation, and MOROCCANOIL ISRAEL, LTD., an Israeli limited company, | Civil Action No: |
| | COMPLAINT |
|         Plaintiffs, | |
|   v. | |
| HARMON STORES, INC., a New Jersey Corporation; and DOES 1 through 10 inclusive, | |
|         Defendants. | |

1

Plaintiff Moroccanoil, Inc., and Plaintiff Moroccanoil Israel, Ltd., for their complaint against the defendants herein, allege the following on knowledge as to plaintiffs and otherwise on information and belief:

## JURISDICTION

1.      This action arises under and this Court has original jurisdiction pursuant to 15 U.S.C. § 1121 (Original Jurisdiction – Trademarks), 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1338(a) (Original Jurisdiction – Patents and Trademarks), 28 U.S.C. § 1332 (Diversity of Citizenship), 28 U.S.C. § 1338 (b) (Original Jurisdiction - Unfair Competition) and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

## VENUE

2.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because while diversity exists, it is not the sole basis for jurisdiction, and the named defendant resides in this district.  Venue is also proper under § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district.

## SUMMARY OF MOROCCANOIL'S CLAIMS

3.      Plaintiff Moroccanoil, Inc., a California corporation, and Plaintiff Moroccanoil Israel, Ltd., an Israeli limited liability company (collectively "Plaintiffs") distribute throughout the United States professional, "salon only" hair care products, currently including:  (a) Moroccanoil Oil Treatment, (b) Moroccanoil Hydrating Styling Cream, (c) Moroccanoil Restorative Hair Masque, (d) Moroccanoil Intense Hydrating Mask, (e) Moroccanoil Intense Curl Cream, (f) Moroccanoil Glimmer Shine Spray, (g) Moisture Repair Shampoo/ Conditioner, (h) Moroccanoil Luminous Hair Spray, and (i) Moroccanoil Light Oil Treatment.   All of these products (collectively the "Moroccanoil Products") contain a unique signature ingredient, argan oil, that is produced from the

kernels of the argan tree which is native to Morocco.

4.     All of the Moroccanoil Products bear one or more of the trademarks owned and used by the Plaintiffs, including the marks "MOROCCANOIL®", the "M MOROCCANOIL Design" and the "Vertical MOROCCANOIL M Design" which are federally registered (Nos. 3,478,807, 3,684,910 & 3,684,909, respectively) in Class 3 on the Principal Register of the United States Patent and Trademark Office and are referred to herein as the "Moroccanoil Trademarks."

5.     Moroccanoil Oil Treatment is the most popular product in the line of Moroccanoil Products. It is packaged in 3.4 and 6.8 fluid ounce, amber colored, druggist-style bottles with black screw-on caps. Moroccanoil Oil Treatment bottles have rectangular-shaped, light blue labels containing the Moroccanoil Trademarks and logos and information describing the contents and the usage of the product. The Oil Treatment inside the bottles is a viscous mix of argan oil and other ingredients and is light brown in color.

6.     Moroccanoil learned that defendant Harmon Stores, Inc. ("Harmon") is distributing and selling counterfeit Moroccanoil Oil Treatment products. The counterfeit Moroccanoil Oil Treatment products distributed and sold by Harmon: (a) are packaged in similar 3.4 fluid ounce, amber colored, druggist-style bottles with black screw-on caps, (b) have rectangular-shaped, light blue labels containing imitations of the MOROCCANOIL trademarks, logos and information describing the contents and the usage of the product, that are indistinguishable from authentic Moroccanoil Oil Treatment and (c) contain counterfeit oil inside the bottles that has a color and fragrance similar to that of genuine Moroccanoil Oil Treatment. A suspected counterfeit Moroccanoil Oil Treatment was tested in a laboratory, and these tests have confirmed that the oil in the bottles obtained from Harmon has distinctly different chemical and physical properties that do not match genuine Moroccanoil Oil Treatment.

## THE PLAINTIFFS

7.      Moroccanoil, Inc., is a California corporation doing business from its principal place of business at 16311 Ventura Boulevard, Suite 1200, Los Angeles, California. Moroccanoil, Inc., distributes Moroccanoil Products, including hair conditioners, shampoos and other hair treatments throughout the United States. Plaintiff Moroccanoil, Inc. and its predecessors are referred to herein as "Moroccanoil California."

8.      Moroccanoil Israel, Ltd. is an Israeli limited company doing business from its principal place of business at 16 Moshe Levi Street, in Rishon Lezion, Israel. Moroccanoil Israel, Ltd. is the main manufacturer of Moroccanoil Products and distributes Moroccanoil Products to authorized distributors all over the world, including Moroccanoil California. Plaintiff Moroccanoil Israel, Ltd. and its predecessors are referred to herein as "Moroccanoil Israel."

## THE DEFENDANTS

9.      Plaintiffs are informed and believe that defendant Harmon is a New Jersey corporation having its principal place of business in Union, New Jersey. Harmon has retail stores throughout Connecticut, New Jersey and New York. Harmon also operates a fully interactive "virtual store" website at www.harmondiscount.com where Harmon sells and delivers merchandise to Internet consumers located anywhere in the United States, including in this judicial district, and the rest of the world.

10.     Plaintiffs believe there are other businesses that distribute and sell counterfeit Moroccanoil Products and sue them by fictitious names DOES 1 - 5.

11.     Plaintiffs believe there is a manufacturing company, or companies, that manufacture and sell counterfeit Moroccanoil Products and sue them by fictitious names DOES 6-10.

4

12.     Other than as is alleged in this Complaint, Plaintiffs are ignorant of the true identities and participation of Does 1 through 10, inclusive, and therefore sue them by such fictitious names. Plaintiffs are informed and believe that each of the Defendants designated as a Doe is liable in some manner for the acts and omissions, damages and injuries of which Plaintiffs allege in this Complaint. Plaintiffs will seek to amend this Complaint to state the true identities of Does 1 through 10 when ascertained.

13.     On information and belief, each of the named defendants, and each of the Doe defendants (collectively "Defendants"), were at all relevant times acting to the fullest extent recognized by law as the agent, employee or co-conspirator of each of the other Defendants and that in committing the acts and omissions alleged herein and causing the damage and injuries alleged, were acting within the scope of such agency, employment, conspiracy, joint venture or partnership relationship.  The Defendants have committed acts in furtherance of the conspiracy, have given aid and encouragement to the conspirators and have ratified and adopted the acts of their co-conspirators.

14.     On information and belief, there exists, and at all times herein mentioned there existed, a unity of interests and ownership between Defendants such that any individuality and separateness between the Defendants never existed or has ceased to exist, and the Defendants are in each instance the alter ego of the other Defendants who control each entity.  To adhere to the fiction of the separate existence of the entities as separate and distinct from the Defendants identified with them and owning and controlling them would permit an abuse of the corporate and other entity privileges, would sanction fraud and would promote injustice.

## THE MOROCCANOIL PRODUCTS

15.     As alleged in Paragraphs 3 through 5 above, the genuine Moroccanoil Oil Treatment is packaged in 3.4 and 6.8 fluid ounce, amber colored, druggist-style bottles with black screw-on caps.  The light blue, rectangular-shaped front labels of the Moroccanoil Oil Treatment contain the Moroccanoil logo with an orange-colored "M" and the word "MOROCCANOIL" in white, capital letters vertically up the left hand side of the label, as well as the words "Oil treatment for all hair types", "Moroccanoil Series", and "alcohol free" in English, French and Spanish.  The light blue, rectangular-shaped back labels of the Moroccanoil Oil Treatment contain the Moroccanoil logo with "MOROCCANOIL" in orange, capital letters, a description of the product and its usage in English, French and Spanish, the ingredient list, and the words "Sold Exclusively By Professional Salons". Each genuine bottle includes a sticker that extends from the top of the bottle cap down to the front of the bottle that includes the Moroccanoil logo with an orange "M" with the word "Moroccanoil" through it in white letters, and the words "The Original" in English and French.  Moroccanoil Products bear the trademarks, trade names and trade dress described below.

16.     Manufacturers, such as Moroccanoil Israel, apply Uniform Code Council barcode numbers on their products.  These barcodes are universally used by manufacturers, distributors and sellers to keep track of and identify the products they sell.  Moroccanoil was issued an EAN-13 (international) UPC manufacturer number of 7290011.  The first three numbers, 729, refer to the fact that Moroccanoil manufactures its products in Israel.  UPC barcode number 7290011-521011 refers to the 3.4 ounce size of Moroccanoil Oil Treatment and number 7290011-521059 refers to the 6.8 ounce size of Moroccanoil Oil Treatment (these numbers are collectively the "Moroccanoil UPC Numbers").  Moroccanoil Israel prints the Moroccanoil UPC Numbers on the labels of all of its products during their manufacture.

6

17.     Moroccanoil Oil Treatment has a unique viscosity, feel and smell. The trade dress of Moroccanoil Products includes the size, shape, color, wording, and overall appearance of the Moroccanoil Products, as well as their packaging and graphics used in advertising ("Moroccanoil Trade Dress"). The Moroccanoil Trade Dress includes the word "Moroccanoil" in white, letters arranged vertically on the left side of the front label. The Moroccanoil Trade Dress is non-functional, distinctive and has acquired secondary meaning in the marketplace as it has become uniquely associated with Moroccanoil as the source of these products.

18.     The following images are true and correct photographs of the front and back side of a bottle of genuine Moroccanoil Oil Treatment:



## MOROCCANOIL'S INTELLECTUAL PROPERTY

19.    All of the Moroccanoil Oil Treatment bear one or more of the Moroccanoil Trademarks (a) which are federally registered in Class 3 on the principal register of the United States Patent and Trademark Office ("USPTO") or (b) for which applications for registration in Class 3 on the principal register are pending before the USPTO, including:

      a.    the word "Moroccanoil" (USPTO Registration No. 3,478,807 -- with a first use in commerce date of January 1, 2007);

      b.    "M Moroccanoil Design" (vertical) - with the word Moroccanoil in white lettering written vertically with the letter M in orange written horizontally on the right side (USPTO Registration No. 3,684,910 - with a first use in commerce date of March 11, 2007); and

      c.    "M Moroccanoil Design" (horizontal) - with the word Moroccanoil in white lettering written horizontally across the orange letter M (USPTO Registration No. 3,684,909 - with a first use in commerce date of March 11, 2007).

20.    The trademarks listed above and the Moroccanoil Trade Dress are referred to collectively herein as the "Moroccanoil Trademarks and Moroccanoil Trade Dress."

21.    Plaintiffs own all of the right, title and interest in the United States to the Moroccanoil Trademarks and the goodwill associated with them.  The registration and applications are based on either the actual use of the trademarks by Plaintiffs or their intent to use the trademarks.

22.    The following images are true and correct photographs of Moroccanoil trademarks owned by Plaintiffs which are registered on the Principal Register in the U.S. Patent and Trademark Office:

**TRADEMARK**
PRINCIPAL REGISTER

# MOROCCANOIL

USPTO Registration No. 3,478,807



USPTO Registration No. 3,684,910        USPTO Registration No. 3,684,909

23.    Since about January 2007, Plaintiffs have continuously used one or more of the Moroccanoil Trademarks in commerce in the United States. Plaintiffs were the first entrants into the market and have built goodwill and value in the Moroccanoil Trademarks and Moroccanoil Products such that consumers associate "Moroccanoil" exclusively with Plaintiffs and their Moroccanoil Products. Moroccanoil Products are high-quality beauty products that are held in high regard, and used regularly by successful stylists and salons throughout the United States. The Moroccanoil Trademarks are inherently distinctive and have acquired secondary meaning in the marketplace.

9

24. The distribution arrangements of the Plaintiffs permit the sale of Moroccanoil Products only to professional salons ("Authorized Salons") and licensed cosmetologists for use on or sale to consumer salon patrons (the "Authorized Use"). The contracts of Plaintiffs with their distributors prohibit any sales, either directly or indirectly, to unlicensed cosmetologists or salons. The restrictions prohibit any sales to general merchandisers such as Harmon as well as to general merchandisers or suppliers such as those Doe Defendants that supplied Harmon. When general merchandisers sell Moroccanoil Products outside the authorized system, it damages the goodwill of Plaintiffs and reduces the sales of Plaintiffs. It also creates a secondary gray or black market wherein counterfeit Moroccanoil Products are sold.

25. Defendants seek to profit from the success of Plaintiffs. However, Defendants know that the restrictions stated in the distribution agreements of Moroccanoil make it impossible for them to obtain Moroccanoil Products from Plaintiffs or any Moroccanoil distributors. Therefore, Defendants and their associates resort to deceptive, fraudulent, and illegal trade practices to obtain Moroccanoil Products. These practices include inducing Moroccanoil distributors, salons, and their employees to cheat Plaintiffs by violating their distribution agreements. Defendants encourage Moroccanoil distributors and salons to cheat Plaintiffs by encouraging the distributors to order more Moroccanoil Products than the distributor or any salon needs. The excess Moroccanoil Products are then sold, directly or indirectly, to Defendants. In such instances, the Moroccanoil distributor or salon orders excess Moroccanoil Products with the intent to defraud Plaintiffs and to breach their agreements not to sell Moroccanoil Products except to salons or consumers for personal use. Defendants also encourage the Moroccanoil distributors to falsify the sales reports of Moroccanoil Products in an attempt to obscure these fraudulent sales. This falsification hinders the ability of Plaintiffs to locate these fraudulent practices.

26.     In addition, the activities and methods of Defendants enable the Defendants and others to pass counterfeit versions of Moroccanoil Products intermixed with genuine products. This occurs because: (a) Defendants obtain the Moroccanoil Products through surreptitious sources, which are difficult or impossible to trace, thereby making it difficult to spot counterfeit products; and (b) Defendants often conduct transactions with no paperwork, falsified paperwork, or destroy the paper work involved so that the transaction is difficult or impossible to trace. These actions enable counterfeit Moroccanoil Products to enter the stream of commerce commingled with authentic Moroccanoil Products in a manner that makes it hard, if not impossible, to trace and halt.

## THE COUNTERFEIT PRODUCTS

27.     The counterfeit Moroccanoil Products distributed and sold by Defendants are defective imitations of genuine Moroccanoil Oil Treatment. The copying was intentional, willful and malicious, intending to deceive consumers. The counterfeits are designed to look identical to genuine Moroccanoil Products as they are packaged in nearly identical, amber colored, druggist-style bottles with black screw-on caps. The trade dress of the counterfeits is identical to that of the genuine products, including the size, shape, color, wording, and overall appearance of the products. The counterfeit labels bear copies of the Moroccanoil Trademarks.

28.     The labels on the counterfeits recite numerous false statements, including:

a.      *Batch Numbers:* The counterfeit products list a batch number of "216GH" even though chemical testing shows they are counterfeit, thus, they did not come from a genuine batch with No. 216GH.

b.      *Designations of Origin and Distribution:* The counterfeits are marked "Made in Israel by A.P.P. Ltd." which is false because the contents of the bottles are counterfeit and could not have come from A.P.P. Ltd. in Israel. Similarly, the counterfeits are marked "Distributed by

Moroccanoil North America" which is false because the bottles were not distributed by Moroccanoil California in North America.

       c.     *UPC Codes:* The counterfeits bear a UPC code number of 7290011-521011 which is false because the products are not genuine and could not have been manufactured by Moroccanoil Israel or distributed by Moroccanoil California.

       29.     The counterfeit bottles, labels and trade dress are not genuine since they were not used by Moroccanoil Israel in the manufacture of its genuine products. Laboratory analysis of the oil inside the counterfeits confirms that the oil is "distinctly different" from genuine Moroccanoil Oil Treatment since the oil in the counterfeits has a: (a) significantly different type and concentration of silicones and (b) significantly different visible light absorbance amount.

       30.     Sample bottles of "Moroccanoil Oil Treatment" were purchased from Harmon retail stores in New Jersey. Laboratory testing has confirmed that the oil in the bottles is counterfeit. The following images are true and correct photographs of one of the counterfeit products purchased from Harmon:



## FIRST CLAIM FOR RELIEF
## TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. § 1114)
## AGAINST ALL DEFENDANTS

31.     Plaintiffs allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 30, as if fully set forth herein.

32.     This claim is based on extensive advertising by Plaintiffs of the Moroccanoil Trademarks and Moroccanoil Trade Dress, their extensive sales and the widespread popularity of Moroccanoil Products.  Any product bearing one or more of the Moroccanoil Trademarks and Moroccanoil Trade Dress is immediately associated by purchasers and the public as being a genuine Moroccanoil product.

33.     The use of one or more copies of the Moroccanoil Trademarks and Moroccanoil Trade Dress by Harmon and the other Defendants on the counterfeit Moroccanoil Products, which Defendants developed, manufactured, transported, offered for sale and sold, tends to and is more than likely to confuse and deceive consumers into believing that the counterfeit Moroccanoil Products are genuine.  In fact, the purported Moroccanoil Products supplied by Harmon, are not genuine Moroccanoil Products and bear counterfeit and infringing copies of Moroccanoil Trademarks and infringing copies of the Moroccanoil Trade Dress.

34.     The acts of Harmon and Defendants have been committed without the consent of Plaintiffs.  The acts of Harmon and Defendants are likely to cause confusion and mistake in the minds of the purchasing public, and, in particular, tend to and do falsely create the impression that the counterfeit products sold by Harmon are manufactured, distributed, warranted, authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

35.     As a direct and proximate result of the counterfeiting of the Moroccanoil Trademarks, and the infringement the Moroccanoil Trademarks and Moroccanoil Trade Dress, Plaintiffs have

suffered damages in the form of increased costs and reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to increase every day. Plaintiffs will amend their pleadings, at or before trial, to conform to proof of the amount of their damages.

36.     As a proximate result of their wrongful conduct, Defendants have been unjustly enriched. Plaintiffs demand and are entitled to an accounting from Harmon and Defendants, including all information necessary to permit Plaintiffs to determine the gains, profits and advantages that Harmon and Defendants have obtained by reason of their wrongful conduct described herein.

37.     Plaintiffs have no adequate remedy at law. Monetary compensation will not afford Plaintiffs adequate relief. The acts and omissions of Harmon and Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult, if not impossible, to measure. Unless Harmon and Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged, including infringement of the Moroccanoil Trademarks, Plaintiffs will continue to suffer irreparable harm. Injunctive relief is therefore appropriate pursuant to 15 U.S.C. § 1116 to prevent Harmon and Defendants from engaging in any further violations of 15 U.S.C. § 1114.

38.     Upon information and belief, the activities of Harmon and Defendants complained of herein constitute willful and intentional counterfeiting and infringement of the Moroccanoil Trademarks and further constitute willful and intentional infringement of the Moroccanoil Trade Dress in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114. The willfulness of the counterfeiting and infringement by Harmon and the Defendants is evidenced by the similar bottles, labels, wording, logos, and oil of the counterfeits. Harmon and the Defendants'

activities are in total disregard of the rights of Plaintiffs. As a result, Plaintiffs are further entitled to damages and remedies as provided by 15 U.S.C. §§ 1116 and 1117.

**SECOND CLAIM FOR RELIEF**
**FALSE DESIGNATION OF ORIGIN**
**AND FALSE REPRESENTATION**
**(15 U.S.C. § 1125(a))**
**AGAINST ALL DEFENDANTS**

39.   Plaintiffs allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 30, as if fully set forth herein.

40.   The distribution, display and sale of counterfeit Moroccanoil Products by Harmon and Defendants that are indistinguishable from authentic Moroccanoil Products and the diversion of genuine Moroccanoil Products constitutes a false designation of origin, false description and a false representation that the counterfeit products manufactured, distributed and sold by Harmon and Defendants originate from, or are sponsored or authorized by Moroccanoil and that the diversion is sponsored and authorized by Moroccanoil.

41.   The activities of Harmon and Defendants in advertising, marketing and selling diverted and counterfeit Moroccanoil Products constitute a false designation of origin.

42.   As a direct and proximate result of violations of 15 U.S.C. § 1125(a), Plaintiffs have suffered damages in the form of increased costs and reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to increase every day. Plaintiffs will amend their pleadings, at or before trial, to conform to proof to state the amount of their damages.

43.   As a proximate result of their wrongful conduct, Harmon and Defendants have been unjustly enriched. Plaintiffs demand and are entitled to an accounting from Harmon and Defendants, including all information necessary to permit Plaintiffs to determine the gains, profits and

advantages that Harmon and Defendants have obtained by reason of their wrongful conduct described herein.

44.   Plaintiffs have no adequate remedy at law.  Monetary compensation will not afford Plaintiffs adequate relief.  The acts and omissions of Harmon and Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult, if not impossible, to measure.  Unless Harmon and Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged, including infringement of the Moroccanoil Trademarks, Plaintiffs will continue to suffer irreparable harm.  Injunctive relief is therefore appropriate pursuant to 15 U.S.C. § 1116 to prevent Harmon and Defendants from engaging in any further violations of 15 U.S.C. § 1125(a).

45.   Upon information and belief, the activities of Harmon and Defendants complained of here constitute willful and intentional infringement of Moroccanoil Trademarks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1125(a).  The willfulness of the infringement by Harmon and Defendants is evidenced by the similar bottles, labels, wording, logos, and contents of the counterfeit products.  The activities of Harmon and Defendants are in total disregard of the rights of Plaintiffs.  As a result, Plaintiffs are further entitled to damages as provided by 15 U.S.C. §§ 1116 and 1117.

### THIRD CLAIM FOR RELIEF
### UNFAIR BUSINESS PRACTICES
### (CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200)
### AGAINST ALL DEFENDANTS

46.   Plaintiffs allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 30, as if fully set forth herein.

47.     The wrongful conduct of Defendants, as alleged herein, is in active participation and concert with the other named defendants and constitutes unfair and/or fraudulent business practices as defined by California Bus. & Prof. Code § 17200, *et seq.*

48.     This unfair competition includes, but is not limited to, the following separate activities:

        a.      the development and manufacture of counterfeit Moroccanoil Products;

        b.      the marketing and advertising of counterfeit Moroccanoil Products;

        c.      the transporting and delivering of counterfeit Moroccanoil Products;

        d.      the distribution and sale of counterfeit Moroccanoil Products;

        e.      the marketing and advertising of diverted Moroccanoil Products;

        f.      the transportation and delivery of diverted Moroccanoil Products; and

        g.      other such acts of unfair competition.

49.     As a proximate result of their wrongful conduct, Defendants have been unjustly enriched. Plaintiffs demand and are entitled to an accounting from each of the Defendants, including all information necessary to permit Plaintiffs to determine the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

50.     As a direct and proximate result of the unfair business practices, Plaintiffs have suffered damages in the form of increased costs and reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to increase every day. Plaintiffs will amend their pleadings, at or before trial, to conform to proof to state the amount of their damages.

51.     Plaintiffs have no adequate remedy at law. Monetary compensation will not afford Plaintiffs adequate relief. The acts and omissions of Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult,

if not impossible, to measure. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged, Plaintiffs will continue to suffer irreparable harm. Injunctive relief is therefore appropriate pursuant to California Bus. & Prof. Code §§ 17200 and 17500, *et seq.* to prevent Defendants from engaging in any further acts of unfair competition.

**FOURTH CLAIM FOR RELIEF**
**COMMON LAW UNFAIR COMPETITION AND**
**CONSPIRACY TO UNFAIRLY COMPETE**
**AGAINST ALL DEFENDANTS**

52.     Plaintiffs allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 30, as if fully set forth herein.

53.     Defendants use unfair trade practices to develop, manufacture, promote, and sell counterfeit Moroccanoil Oil Treatment in unfair competition with Plaintiffs.

54.     This common law unfair competition includes, but is not limited to, the following separate activities:

a.     the development and manufacture of counterfeit Moroccanoil Products;

b.     the marketing and advertising of counterfeit Moroccanoil Products;

c.     the transporting and delivering of counterfeit Moroccanoil Products;

d.     the distribution and sale of counterfeit Moroccanoil Products;

e.     the marketing and advertising of diverted Moroccanoil Products;

f.     the transporting and delivering of diverted Moroccanoil Products; and

g.     other such acts of unfair competition.

55.     As a proximate result of Harmon's wrongful conduct, Harmon has been unjustly enriched. Moroccanoil demands, and is entitled to, an accounting from each of the Defendants, including all information necessary to permit Plaintiffs to determine the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

18

56.     As a direct and proximate result of the unfair competition and unfair business practices, Plaintiffs have suffered damages in the form of increased costs and reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to increase every day. Plaintiffs will amend their pleadings, at or before trial, to conform to proof to state the amount of their damages.

57.     Plaintiffs have no adequate remedy at law.  Monetary compensation will not afford Plaintiffs adequate relief.  The acts and omissions of Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult, if not impossible, to measure.  Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged Plaintiffs will continue to suffer irreparable harm.  Injunctive relief is therefore appropriate to prevent Defendants from engaging in any further acts of unfair competition.

58.     The conduct of Defendants is fraudulent, malicious and oppressive.  The Defendants have engaged in the illegal development, manufacture, transportation, delivery, distribution and sale of counterfeit Moroccanoil Oil Treatment.  The conduct of Defendants is despicable.  Their conduct subjects Plaintiffs to cruel and unjust hardship by which its rights are brazenly attacked and stolen. The conduct of Defendants is done willfully and Defendants engage in their misconduct in conscious disregard of the rights of Plaintiffs.  Punitive damages should be awarded to punish Defendants and deter similar conduct in the future.

## FIFTH CLAIM FOR RELIEF
## INTENTIONAL INTERFERENCE WITH CONTRACT
## AGAINST ALL DEFENDANTS

59.     Plaintiffs allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 30, as if fully set forth herein.

60.     Plaintiffs have contracts with numerous distributors for the sale of Moroccanoil Products. These contracts restrict the sales of Moroccanoil Products by the distributors to hair salons which promise to limit their use to services on patrons. These contracts also limit salon resales to consumer patrons of the salon and specifically prohibit any online sales of the Moroccanoil Products. In turn, Plaintiffs promise their distributors that they will only permit Moroccanoil Products to be sold in hair salons, never online, and that Plaintiffs will be the only source of Moroccanoil Products.

61.     On information and belief, Defendants are aware of the contracts Plaintiffs have. On further information and belief, each Defendant has entered an agreement with the other Defendants to solicit Moroccanoil products from those who have contracts with Plaintiffs.

62.     On information and belief, Defendants intended to and did in fact disrupt and burden Plaintiffs' performance of their contracts with their distributors and subdistributors by:

        a.     distributing counterfeit Moroccanoil Products;

        b.     offering counterfeit Moroccanoil Products for sale in Harmon stores and online; and

        c.     diverting Moroccanoil Products outside of the authorized distribution chain established by Plaintiffs through their distribution contracts.

63.     On information and belief, Defendants intended to disrupt the contracts of Plaintiffs. The conduct of Defendants was a substantial factor in making Plaintiffs' performance of their contracts more difficult and more expensive.

64.     As a direct and proximate result of the disruption of the contracts of Plaintiffs, the contractual relationships between Plaintiffs and their distributors have been damaged, injured or breached, and Plaintiffs have suffered damages in the form of increased costs and reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to increase every

day. Plaintiffs will amend their pleadings, at or before trial, to conform to proof to state the amount of their damages.

65.     As a proximate result of their wrongful conduct, Defendants have been unjustly enriched. Plaintiffs demand and are entitled to an accounting from each Defendant, including all information necessary to permit Plaintiffs to determine the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

66.     Plaintiffs have no adequate remedy at law. Monetary compensation will not afford Plaintiffs adequate relief. The acts and omissions of Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult, if not impossible, to measure. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged Plaintiffs will continue to suffer irreparable harm. Injunctive relief is therefore appropriate to prevent Defendants from engaging in any further unlawful acts or interfering with Plaintiffs' contracts.

67.     The conduct of Defendants is fraudulent, malicious and oppressive. The Defendants have engaged in the illegal development, manufacture, transportation, delivery, distribution and sale of counterfeit Moroccanoil Oil Treatment. The conduct of Defendants is despicable. Their conduct subjects Plaintiffs to cruel and unjust hardship by which its rights are brazenly attacked and stolen. The conduct of Defendants is done willfully and Defendants engage in their misconduct in conscious disregard of the rights of Plaintiffs. Punitive damages should be awarded to punish Defendants and deter similar conduct in the future.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENT INTERFERENCE WITH CONTRACT
## AGAINST ALL DEFENDANTS

68.     Plaintiffs allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 30, as if fully set forth herein.

69.     Plaintiffs have contracts with numerous distributors for the sale of Moroccanoil Products.  These contracts restrict the sales of Moroccanoil Products by the distributors to hair salons which promise to limit their use to services on patrons.  These contracts also limit salon resales to consumer patrons of the salon and specifically prohibit any online sales of the Moroccanoil Products. In turn, Plaintiffs promise their distributors that they will only permit Moroccanoil Products to be sold in hair salons, never online, and that Plaintiffs will be the only source of Moroccanoil Products.

70.     On information and belief, Defendants are aware of the contracts Plaintiffs have.  On further information and belief, Defendants have entered a scheme to distribute and sell diverted and counterfeit Moroccanoil Products.

71.     On information and belief, Defendants engaged in negligent conduct which disrupted these contracts.  Defendants knew or should have known that when they distributed and sold the diverted and counterfeit Moroccanoil Products that this conduct could hinder or damage the ability of Plaintiffs to perform under their contracts with their distributors.

72.     As a direct and proximate result of the disruption of the contracts of Plaintiffs, the contractual relationships between Plaintiffs and their distributors have been damaged, injured or breached, and Plaintiffs have suffered damages in the form of increased costs and reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to increase every day.  Plaintiffs will amend their pleadings, at or before trial, to conform to proof to state the amount of their damages.

73.     As a proximate result of their wrongful conduct, Defendants have been unjustly enriched.  Plaintiffs demand and are entitled to an accounting from each Defendant, including all information necessary to permit Plaintiffs to determine the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

74.     Plaintiffs have no adequate remedy at law.  Monetary compensation will not afford Plaintiffs adequate relief.  The acts and omissions of Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult, if not impossible, to measure.  Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged Plaintiffs will continue to suffer irreparable harm.  Injunctive relief is therefore appropriate to prevent Defendants from engaging in any further unlawful acts or interfering with Plaintiffs' contracts.

## SEVENTH [SEVENTH] CLAIM FOR RELIEF
## INTENTIONAL INTERFERENCE WITH
## PROSPECTIVE BUSINESS ADVANTAGE
## AGAINST ALL DEFENDANTS

75.     Moroccanoil alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 30, as if fully set forth herein.

76.     On information and belief, Defendants knew of the relationships between Plaintiffs and their existing and prospective customers.  Plaintiffs believe that Defendants intended to disrupt these relationships by engaging in the wrongful conduct as alleged herein.  These actions were independently wrongful because they constitute counterfeiting, trademark infringement and unfair competition.

77.     On information and belief, Defendants intentionally interfered with the economic relationships between Plaintiffs and their existing contract parties.  On further information and belief, Defendants intentionally interfered with the economic relationships between Plaintiffs and

their existing and prospective customers, and others, that were likely to have resulted in an economic benefit to Plaintiffs.

78.     As a direct and proximate result of the disruption of Plaintiffs' contracts, Plaintiffs' contractual relationships with its contract parties have been damaged, injured or breached, and Plaintiffs have suffered damages in the form of increased costs and reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to increase every day. Plaintiffs will amend their pleadings, at or before trial, to conform to proof to state the amount of their damages.

79.     As a proximate result of their wrongful conduct, Defendants have been unjustly enriched. Plaintiffs demand and are entitled to an accounting from each Defendant, including all information necessary to permit Plaintiffs to determine the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

80.     Plaintiffs have no adequate remedy at law. Monetary compensation will not afford Plaintiffs adequate relief. The acts and omissions of Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult, if not impossible, to measure. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged Plaintiffs will continue to suffer irreparable harm. Injunctive relief is therefore appropriate to prevent Defendants from engaging in any further unlawful acts or interfering with Plaintiffs' contracts.

81.     The conduct of Defendants is fraudulent, malicious and oppressive. The Defendants have engaged in the illegal development, manufacture, transportation, delivery, distribution and sale of counterfeit Moroccanoil Oil Treatment. The conduct of Defendants is despicable. Their conduct subjects Plaintiffs to cruel and unjust hardship by which its rights are brazenly attacked and stolen.

The conduct of Defendants is done willfully and Defendants engage in their misconduct in conscious disregard of the rights of Plaintiffs. Punitive damages should be awarded to punish Defendants and deter similar conduct in the future.

**EIGHTH [EIGHTH] CLAIM FOR RELIEF**
**NEGLIGENT INTERFERENCE WITH**
**PROSPECTIVE BUSINESS ADVANTAGE**
**AGAINST ALL DEFENDANTS**

82. Moroccanoil alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 30, as if fully set forth herein.

83. On information and belief, Harmon knew of the relationships between Plaintiffs and their existing and prospective distributors and others. These existing and prospective economic relations were likely to have resulted in an economic benefit to Plaintiffs.

84. On information and belief, Defendants entered a scheme to distribute and sell diverted and counterfeit Moroccanoil Products.

85. On information and belief, Defendants knew when they distributed and sold diverted and counterfeit Moroccanoil Products that this conduct could hinder or damage the ability of Plaintiffs to perform under their existing contracts and prospective economic relations.

86. Defendants engaged in negligent conduct which disrupted these relationships. These actions were independently wrongful because they constitute counterfeiting, trademark infringement and unfair competition.

87. As a direct and proximate result of the disruption of Plaintiffs' contracts, the contractual relationships of Plaintiffs with their distributors, and others, have been damaged, injured or breached, and Plaintiffs have suffered damages in the form of increased costs and reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to

increase every day. Plaintiffs will amend their pleadings, at or before trial, to conform to proof to the amount of their damages.

88.     As a proximate result of their wrongful conduct, Defendants have been unjustly enriched. Plaintiffs demand and are entitled to an accounting from Defendants, including all information necessary to permit Moroccanoil to determine the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

89.     Plaintiffs have no adequate remedy at law. Monetary compensation will not afford Plaintiffs adequate relief. The acts and omissions of Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult, if not impossible, to measure. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged Plaintiffs will continue to suffer irreparable harm. Injunctive relief is therefore appropriate to prevent Defendants from engaging in any further unlawful acts and interference with Plaintiffs' contracts.

## PRAYER

WHEREFORE, Plaintiffs pray for an award as follows:

1.     Preliminary and permanent injunctive relief against all Defendants, and each of them, and their officers, agents, attorneys, representatives and assigns, and all persons acting in active concert or participation with them, from doing any of the following acts, either directly or indirectly, and from doing any act prefatory to the prohibited acts:

a.     Developing, manufacturing, marketing, advertising, acquiring, transporting, distributing, developing, offering to sell or selling any counterfeit bottles of Moroccanoil Oil Treatment product bearing counterfeit Moroccanoil trademarks;

      b.      Using any of Moroccanoil's Trademarks, or any other Moroccanoil trademark in connection with their business, including but not limited to:

      (1)      the word "Moroccanoil" (USPTO Registration No. 3,478,807 -- with a first use in commerce date of January 1, 2007);

      (2)      "M Moroccanoil Design" (vertical) - with the word Moroccanoil in white lettering written vertically with the letter M in orange written horizontally on the right side (USPTO Registration No. 3,684,910 - with a first use in commerce date of March 11, 2007); and

      (3)      "M Moroccanoil Design" (horizontal) - with the word Moroccanoil in white lettering written horizontally across the orange letter M (USPTO Registration No. 3,684,909 - with a first use in commerce date of March 11, 2007).

      c.      Otherwise infringing the Moroccanoil Trademarks or any other Moroccanoil trademark;

      d.      Causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of the goods of Defendants;

      e.      Using any false designation of origin or false representation concerning any Moroccanoil product;

      f.      Misrepresenting to anyone that they are authorized Moroccanoil manufacturers or distributors;

      g.      Misrepresenting to anyone that they carry, distribute or sell genuine Moroccanoil Products or that they obtain their products directly from Moroccanoil;

      h.      Any acts of unfair competition or unfair practice involving or affecting Moroccanoil Trademarks or any Moroccanoil product; and

    i.  Soliciting, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs "a" through "i".

   2.  For an order directing Defendants, and each of them, to file with this Court and serve on Plaintiffs within 30 days after service of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

   3.  For an order requiring Defendants, and each of them, to deliver to Plaintiffs:

    a.  all products, literature, and other material bearing any counterfeits of the Moroccanoil Trademarks or any other infringement of the intellectual property of Plaintiffs or which falsely identifies the source of any products; and

    b.  printing devices, labels, packing, bottles, advertising or any other items used in the manufacture, publicity, advertising or sale of products bearing any counterfeits of the Moroccanoil Trademarks.

   4.  For a seizure of all counterfeit, diverted, repackaged, defaced, and damaged Moroccanoil goods and marks;

   5.  For expedited discovery on the subject of the suppliers to, and purchasers from, Defendants of counterfeit Moroccanoil Oil Treatment products in order that Plaintiffs can quickly locate the source and locations of these illegal products;

   6.  For damages and remedies as provided by 15 U.S.C. §§ 1116 and 1117;

   7.  For damages and remedies as provided by 15 U.S.C. § 1125;

   8.  For damages and remedies as provided by 19 U.S.C. § 1526;

9.     For damages according to proof and for all gains, profits, or advantages derived by Defendants by their unfair trade practices and unfair competition to the fullest extent allowed by common law, but not less than $500,000;

10.    For punitive and exemplary damages;

11.    For attorney's fees;

12.    For costs; and

13.    For such other and further relief as the Court deems just and proper.


Dated: November 17, 2010                    GOTTLIEB RACKMAN & REISMAN, P.C.


                                            By: _____
                                            By: Maria A. Savio (MAS 7756)
                                            msavio@grr.com
                                            270 Madison Avenue
                                            New York, New York 10016
                                            212-684-3900

                                            Local Counsel for Plaintiffs
                                            Moroccanoil, Inc. and
                                            Moroccanoil Israel, Ltd.

Of Counsel:
CONKLE, KREMER & ENGEL

William C. Conkle
Mark C. Riedel
Scott A. Hampton
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403- 351
Phone: (310) 998-9100
Fax: (310) 998-9109

## DEMAND FOR JURY TRIAL

Plaintiffs, Moroccanoil, Inc. and Moroccanoil Israel, Ltd., demand trial by jury of all triable issues.

Dated: November 17, 2010

GOTTLIEB RACKMAN & REISMAN, P.C.

By: _____
By: Maria A. Savio (MAS 7756)
msavio@grr.com
270 Madison Avenue
New York, New York 10016
212-684-3900

Local Counsel for Plaintiffs
Moroccanoil, Inc. and
Moroccanoil Israel, Ltd.

Of Counsel:
CONKLE, KREMER & ENGEL

William C. Conkle
Mark C. Riedel
Scott A. Hampton
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403- 351
Phone: (310) 998-9100
Fax: (310) 998-9109