Maria A. Savio (MAS 7756)
  *msavio@grr.com*
Gottlieb Rackman & Reisman, P.C.
270 Madison Avenue
New York, New York 10016
212-684-3900

Local Counsel for Plaintiffs
Moroccanoil, Inc. and
Moroccanoil Israel, Ltd.

Mark C. Riedel (SB# 129205)
  *m.riedel@conklelaw.com*
(Appearing Pro Hac Vice)
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100 • Fax: (310) 998-9109

Counsel for Plaintiffs Moroccanoil, Inc.
and Moroccanoil Israel, Ltd.

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOROCCANOIL, INC., a California corporation, and MOROCCANOIL ISRAEL, LTD., an Israeli limited company, | Civil Action No: 2:10-cv-06016-PGS(ESx) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | |
| HARMON STORES, INC., a New Jersey Corporation; DLR DISTRIBUTION, INC., a Florida corporation; ROBELL GROUP, LLC. a New Jersey limited liability corporation; PRO HAIR SALES, INC. a New York Corporation; and DOES 1 through 10 inclusive, | |
| Defendants. | |

1

HARMON STORES, INC.,

       Third Party Plaintiff

   v.

ROBELL GROUP, LLC, D.L.R.
DISTRIBUTION, INC. and PRO
HAIR SALES, INC.,

       Third Party Defendants.

     Plaintiff Moroccanoil, Inc., and Plaintiff Moroccanoil Israel, Ltd., for their first amended complaint against the defendants herein, allege the following on knowledge as to plaintiffs and otherwise on information and belief:

## JURISDICTION

1.    This action arises under and this Court has original jurisdiction pursuant to 15 U.S.C. § 1121 (Original Jurisdiction – Trademarks), 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1338(a) (Original Jurisdiction – Patents and Trademarks), 28 U.S.C. § 1332 (Diversity of Citizenship), 28 U.S.C. § 1338 (b) (Original Jurisdiction - Unfair Competition) and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

## VENUE

2.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because while diversity exists, it is not the sole basis for jurisdiction, and two of the named defendants reside in this district.  Venue is also proper under § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district.

## SUMMARY OF MOROCCANOIL'S CLAIMS

3.     Plaintiff Moroccanoil, Inc., a California corporation, and Plaintiff

Moroccanoil Israel, Ltd., an Israeli limited liability company (collectively "Plaintiffs")

distribute throughout the United States professional, "salon only" hair care products,

currently including:  (a) Moroccanoil Oil Treatment, (b) Moroccanoil Hydrating

Styling Cream, (c) Moroccanoil Restorative Hair Masque, (d) Moroccanoil Intense

Hydrating Mask, (e) Moroccanoil Intense Curl Cream, (f) Moroccanoil Glimmer

Shine Spray, (g) Moisture Repair Shampoo/ Conditioner, (h) Moroccanoil Luminous

Hair Spray, and (i) Moroccanoil Light Oil Treatment.   All of these products

(collectively the "Moroccanoil Products") contain a unique signature ingredient, argan

oil, that is produced from the kernels of the argan tree which is native to Morocco.


4.     All of the Moroccanoil Products bear one or more of the trademarks

owned and used by the Plaintiffs, including the marks "MOROCCANOIL®", the "M

MOROCCANOIL Design" and the "Vertical MOROCCANOIL M Design" which are

federally registered (Nos. 3,478,807, 3,684,910 & 3,684,909, respectively) in Class 3

on the Principal Register of the United States Patent and Trademark Office and are

referred to herein as the "Moroccanoil Trademarks".


5.     Moroccanoil Oil Treatment is the most popular product in the line of

Moroccanoil Products.  It is packaged in 3.4 and 6.8 fluid ounce, amber colored,

druggist-style bottles with black screw-on caps. Moroccanoil Oil Treatment bottles

have rectangular-shaped, light blue labels containing the Moroccanoil Trademarks and logos and information describing the contents and the usage of the product. The Oil Treatment inside the bottles is a viscous mix of argan oil and other ingredients and is light brown in color.

6.     Moroccanoil learned that defendant Harmon Stores, Inc. ("Harmon") is distributing and selling counterfeit Moroccanoil Oil Treatment products. The counterfeit Moroccanoil Oil Treatment products distributed and sold by Harmon: (a) are packaged in similar 3.4 fluid ounce, amber colored, druggist-style bottles with black screw-on caps, (b)  have rectangular-shaped, light blue labels containing imitations of the MOROCCANOIL trademarks, logos and information describing the contents and the usage of the product, that are indistinguishable from authentic Moroccanoil Oil Treatment and (c) contain counterfeit oil inside the bottles that has a color and fragrance similar to that of genuine Moroccanoil Oil Treatment. A suspected counterfeit Moroccanoil Oil Treatment was tested in a laboratory, and these tests have confirmed that the oil in the bottles obtained from Harmon has distinctly different chemical and physical properties that do not match genuine Moroccanoil Oil Treatment.

7.     On information and belief, and as alleged in Harmon's Third Party Complaint, DLR Distribution, Inc. ("DLR"), Pro Hair Sales, Inc. ("Pro Hair"), and Robell Group, LLC. ("Robell") distribute and sell counterfeit Moroccanoil Oil

Treatment products.   On information and belief, DLR, Pro Hair, and Robell distributed and sold counterfeit Moroccanoil Oil Treatment products to Harmon.

## THE PLAINTIFFS

8.    Moroccanoil, Inc., is a California corporation doing business from its principal place of business at 16311 Ventura Boulevard, Suite 1200, Los Angeles, California.  Moroccanoil, Inc., distributes Moroccanoil Products, including hair conditioners, shampoos and other hair treatments throughout the United States. Plaintiff Moroccanoil, Inc. and its predecessors are referred to herein as "Moroccanoil California."

9.    Moroccanoil Israel, Ltd. is an Israeli limited company doing business from its principal place of business at 16 Moshe Levi Street, in Rishon Lezion, Israel. Moroccanoil Israel, Ltd. is the main manufacturer of Moroccanoil Products and distributes Moroccanoil Products to authorized distributors all over the world, including Moroccanoil California.   Plaintiff Moroccanoil Israel, Ltd. and its predecessors are referred to herein as "Moroccanoil Israel."

## THE DEFENDANTS

10.    Plaintiffs are informed and believe that defendant Harmon is a New Jersey corporation having its principal place of business in Union, New Jersey. Harmon has retail stores throughout Connecticut, New Jersey and New York.

Harmon also operates a fully interactive "virtual store" website at www.harmondiscount.com where Harmon sells and delivers merchandise to Internet consumers located anywhere in the United States, including in this judicial district, and the rest of the world.

11.     Plaintiffs are informed and believe that defendant DLR Distribution, Inc. ("DLR") is a Florida corporation having its principal place of business in Delray Beach, FL.

12.     Plaintiffs are informed and believe that defendant Pro Hair Sales, Inc. ("Pro Hair") is a New York corporation having its principal place of business in Hewlett, NY.

13.     Plaintiffs are informed and believe that defendant Robell Group, LLC. ("Robell") is a New Jersey limited liability corporation having its principal place of business in Fairfield, NJ.

14.     Plaintiffs believe there are other businesses that distribute and sell counterfeit Moroccanoil Products and sue them by fictitious names DOES 1 - 5.

15.    Plaintiffs believe there is a manufacturing company, or companies, that manufacture and sell counterfeit Moroccanoil Products and sue them by fictitious names DOES 6-10.

16.    Other than as is alleged in this Complaint, Plaintiffs are ignorant of the true identities and participation of Does 1 through 10, inclusive, and therefore sue them by such fictitious names. Plaintiffs are informed and believe that each of the Defendants designated as a Doe is liable in some manner for the acts and omissions, damages and injuries of which Plaintiffs allege in this Complaint. Plaintiffs will seek to amend this Complaint to state the true identities of Does 1 through 10 when ascertained.

17.    On information and belief, each of the named defendants, and each of the Doe defendants (collectively "Defendants"), were at all relevant times acting to the fullest extent recognized by law as the agent, employee or co-conspirator of each of the other Defendants and that in committing the acts and omissions alleged herein and causing the damage and injuries alleged, were acting within the scope of such agency, employment, conspiracy, joint venture or partnership relationship. The Defendants have committed acts in furtherance of the conspiracy, have given aid and encouragement to the conspirators and have ratified and adopted the acts of their co-conspirators.

18.     On information and belief, there exists, and at all times herein mentioned there existed, a unity of interests and ownership between Defendants such that any individuality and separateness between the Defendants never existed or has ceased to exist, and the Defendants are in each instance the alter ego of the other Defendants who control each entity.  To adhere to the fiction of the separate existence of the entities as separate and distinct from the Defendants identified with them and owning and controlling them would permit an abuse of the corporate and other entity privileges, would sanction fraud and would promote injustice.

## THE MOROCCANOIL PRODUCTS

19.     As alleged in Paragraphs 3 through 5 above, the genuine Moroccanoil Oil Treatment is packaged in 3.4 and 6.8 fluid ounce, amber colored, druggist-style bottles with black screw-on caps.  The light blue, rectangular-shaped front labels of the Moroccanoil Oil Treatment contain the Moroccanoil logo with an orange-colored "M" and the word "MOROCCANOIL" in white, capital letters vertically up the left hand side of the label, as well as the words "Oil treatment for all hair types", "Moroccanoil Series", and "alcohol free" in English, French and Spanish.  The light blue, rectangular-shaped back labels of the Moroccanoil Oil Treatment contain the Moroccanoil logo with "MOROCCANOIL" in orange, capital letters, a description of the product and its usage in English, French and Spanish, the ingredient list, and the words "Sold Exclusively By Professional Salons".  Each genuine bottle includes a

sticker that extends from the top of the bottle cap down to the front of the bottle that includes the Moroccanoil logo with an orange "M" with the word "Moroccanoil" through it in white letters, and the words "The Original" in English and French. Moroccanoil Products bear the trademarks, trade names and trade dress described below.

20.     Manufacturers, such as Moroccanoil Israel, apply Uniform Code Council barcode numbers on their products.   These barcodes are universally used by manufacturers, distributors and sellers to keep track of and identify the products they sell. Moroccanoil was issued an EAN-13 (international) UPC manufacturer number of 7290011.   The first three numbers, 729, refer to the fact that Moroccanoil manufactures its products in Israel. UPC barcode number 7290011-521011 refers to the 3.4 ounce size of Moroccanoil Oil Treatment and number 7290011-521059 refers to the 6.8 ounce size of Moroccanoil Oil Treatment (these numbers are collectively the "Moroccanoil UPC Numbers").   Moroccanoil Israel prints the Moroccanoil UPC Numbers on the labels of all of its products during their manufacture.

21.     Moroccanoil Oil Treatment has a unique viscosity, feel and smell. The trade dress of Moroccanoil Products includes the size, shape, color, wording, and overall appearance of the Moroccanoil Products, as well as their packaging and graphics used in advertising ("Moroccanoil Trade Dress").   The Moroccanoil Trade

Dress includes the word "Moroccanoil" in white, letters arranged vertically on the left side of the front label. The Moroccanoil Trade Dress is non-functional, distinctive and has acquired secondary meaning in the marketplace as it has become uniquely associated with Moroccanoil as the source of these products.

22.    The following images are true and correct photographs of the front and back side of a bottle of genuine Moroccanoil Oil Treatment:

 

## MOROCCANOIL'S INTELLECTUAL PROPERTY

23.    All of the Moroccanoil Oil Treatment bear one or more of the Moroccanoil Trademarks (a) which are federally registered in Class 3 on the principal

register of the United States Patent and Trademark Office ("USPTO") or (b) for which applications for registration in Class 3 on the principal register are pending before the USPTO, including:

   a.   the word "Moroccanoil" (USPTO Registration No. 3,478,807 - with a first use in commerce date of January 1, 2007);

   b.   "M Moroccanoil Design" (vertical) - with the word Moroccanoil in white lettering written vertically with the letter M in orange written horizontally on the right side (USPTO Registration No. 3,684,910 - with a first use in commerce date of March 11, 2007); and

   c.   "M Moroccanoil Design" (horizontal) - with the word Moroccanoil in white lettering written horizontally across the orange letter M (USPTO Registration No. 3,684,909 - with a first use in commerce date of March 11, 2007).

   24.   The trademarks listed above and the Moroccanoil Trade Dress are referred to collectively herein as the "Moroccanoil Trademarks".

   25.   Plaintiffs own all of the right, title and interest in the United States to the Moroccanoil Trademarks and the goodwill associated with them.  The registration and applications are based on either the actual use of the trademarks by Plaintiffs or their intent to use the trademarks.

26.    The following images are true and correct photographs of Moroccanoil trademarks owned by Plaintiffs which are registered on the Principal Register in the U.S. Patent and Trademark Office:

TRADEMARK
PRINCIPAL REGISTER

## MOROCCANOIL

USPTO Registration No. 3,478,807



USPTO Registration No.          USPTO Registration No.
3,684,910                       3,684,909

27.    Since about January 2007, Plaintiffs have continuously used one or more of the Moroccanoil Trademarks in commerce in the United States.  Plaintiffs were the first entrants into the market and have built goodwill and value in the Moroccanoil Trademarks and Moroccanoil Products such that consumers associate "Moroccanoil"

exclusively with Plaintiffs and their Moroccanoil Products. Moroccanoil Products are high-quality beauty products that are held in high regard, and used regularly by successful stylists and salons throughout the United States. The Moroccanoil Trademarks are inherently distinctive and have acquired secondary meaning in the marketplace.

28.   The distribution arrangements of the Plaintiffs permit the sale of Moroccanoil Products only to professional salons ("Authorized Salons") and licensed cosmetologists for use on or sale to consumer salon patrons (the "Authorized Use"). The contracts of Plaintiffs with their distributors prohibit any sales, either directly or indirectly, to unlicensed cosmetologists or salons. The restrictions prohibit any sales to general merchandisers such as Harmon as well as to general suppliers such as, DLR, Pro Hair, and Robell, and those Doe Defendants that supplied Harmon. When general merchandisers sell Moroccanoil Products outside the authorized system, it damages the goodwill of Plaintiffs and reduces the sales of Plaintiffs. It also creates a secondary gray or black market wherein counterfeit Moroccanoil Products are sold.

29.   Defendants seek to profit from the success of Plaintiffs. However, Defendants know that the restrictions stated in the distribution agreements of Moroccanoil make it impossible for them to obtain Moroccanoil Products from Plaintiffs or any Moroccanoil distributors. Therefore, Defendants and their associates

resort to deceptive, fraudulent, and illegal trade practices to obtain Moroccanoil Products. These practices include inducing Moroccanoil distributors, salons, and their employees to cheat Plaintiffs by violating their distribution agreements. Defendants encourage Moroccanoil distributors and salons to cheat Plaintiffs by encouraging the distributors to order more Moroccanoil Products than the distributor or any salon needs. The excess Moroccanoil Products are then sold, directly or indirectly, to Defendants. In such instances, the Moroccanoil distributor or salon orders excess Moroccanoil Products with the intent to defraud Plaintiffs and to breach their agreements not to sell Moroccanoil Products except to salons or consumers for personal use. Defendants also encourage the Moroccanoil distributors to falsify the sales reports of Moroccanoil Products in an attempt to obscure these fraudulent sales. This falsification hinders the ability of Plaintiffs to locate these fraudulent practices.

30. In addition, the activities and methods of Defendants enable the Defendants and others to pass counterfeit versions of Moroccanoil Products intermixed with genuine products. This occurs because: (a) Defendants obtain the Moroccanoil Products through surreptitious sources, which are difficult or impossible to trace, thereby making it difficult to spot counterfeit products; and (b) Defendants often conduct transactions with no paperwork, falsified paperwork, or destroy the paper work involved so that the transaction is difficult or impossible to trace. These actions enable counterfeit Moroccanoil Products to enter the stream of commerce

commingled with authentic Moroccanoil Products in a manner that makes it hard, if not impossible, to trace and halt.

## THE COUNTERFEIT PRODUCTS

31.     The counterfeit Moroccanoil Products distributed and sold by Defendants are defective imitations of genuine Moroccanoil Oil Treatment.  The copying was intentional, willful and malicious, intending to deceive consumers.  The counterfeits are designed to look identical to genuine Moroccanoil Products as they are packaged in nearly identical, amber colored, druggist-style bottles with black screw-on caps. The trade dress of the counterfeits is identical to that of the genuine products, including the size, shape, color, wording, and overall appearance of the products. The counterfeit labels bear copies of the Moroccanoil Trademarks.

32.     The labels on the counterfeits recite numerous false statements, including:

a.      *Batch Numbers:*  The counterfeit products list a batch number of "216GH", "186FH", and "186EH" even though chemical testing shows they are counterfeit, thus, they did not come from a genuine batch with No. 216GH, 186FH or 186EH.

b.      *Designations of Origin and Distribution:*  The counterfeits are marked "Made in Israel by A.P.P. Ltd." which is false because the contents of the

bottles are counterfeit and could not have come from A.P.P. Ltd. in Israel. Similarly, the counterfeits are marked "Distributed by Moroccanoil North America" which is false because the bottles were not distributed by Moroccanoil California in North America.

c.    *UPC Codes:*   The counterfeits bear a UPC code number of 7290011-521011 which is false because the products are not genuine and could not have been manufactured by Moroccanoil Israel or distributed by Moroccanoil California.

33.    The counterfeit bottles, labels and trade dress are not genuine since they were not used by Moroccanoil Israel in the manufacture of its genuine products. Laboratory analysis of the oil inside the counterfeits confirms that the oil is "distinctly different" from genuine Moroccanoil Oil Treatment since the oil in the counterfeits has a:   (a) significantly different type and concentration of silicones and (b) significantly different visible light absorbance amount.

34.   Sample bottles of "Moroccanoil Oil Treatment" were purchased from Harmon retail stores in New Jersey.  Laboratory testing has confirmed that the oil in the bottles is counterfeit.  The following images are true and correct photographs of one of the counterfeit products purchased from Harmon:

 

## FIRST CLAIM FOR RELIEF
## TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. § 1114)
## AGAINST ALL DEFENDANTS

35.   Plaintiffs allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 34, as if fully set forth herein.

36.   This claim is based on extensive advertising by Plaintiffs of the Moroccanoil Trademarks, their extensive sales and the widespread popularity of

Moroccanoil Products.   Any product bearing one or more of the Moroccanoil Trademarks is immediately associated by purchasers and the public as being a genuine Moroccanoil product.

37.   The use of one or more copies of the Moroccanoil Trademarks by Defendants on the counterfeit bottles of Moroccanoil Oil Treatment, which Defendants developed, manufactured, transported, offered for sale and sold, tends to and is more than likely to confuse and deceive consumers into believing that the counterfeit Moroccanoil Products are genuine.   In fact, the purported Moroccanoil Products supplied by Defendants, are not genuine Moroccanoil Products and bear counterfeit and infringing copies of Moroccanoil Trademarks.

38.   The acts of Defendants have been committed without the consent of Plaintiffs.   The acts of Defendants are likely to cause confusion and mistake in the minds of the purchasing public, and, in particular, tend to and do falsely create the impression that the counterfeit products sold by Defendants are manufactured, distributed, warranted, authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

39.   As a direct and proximate result of the counterfeiting and infringement of the Moroccanoil Trademarks, Plaintiffs have suffered damages in the form of

increased costs and reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to increase every day. Plaintiffs will amend their pleadings, at or before trial, to conform to proof of the amount of their damages.

40.  As a proximate result of their wrongful conduct, Defendants have been unjustly enriched.  Plaintiffs demand and are entitled to an accounting from Defendants, including all information necessary to permit Plaintiffs to determine the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

41.  Plaintiffs have no adequate remedy at law. Monetary compensation will not afford Plaintiffs adequate relief.  The acts and omissions of Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult, if not impossible, to measure.  Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged, including infringement of the Moroccanoil Trademarks, Plaintiffs will continue to suffer irreparable harm.  Injunctive relief is therefore appropriate pursuant to 15 U.S.C. § 1116 to prevent Defendants from engaging in any further violations of 15 U.S.C. § 1114.

42.     Upon information and belief, the activities of Defendants complained of herein constitute willful and intentional counterfeiting and infringement of the Moroccanoil Trademarks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114.   The willfulness of the counterfeiting and infringement by Defendants is evidenced by the similar bottles, labels, wording, logos, and oil of the counterfeits. Defendants' activities are in total disregard of the rights of Plaintiffs. As a result, Plaintiffs are further entitled to damages and remedies as provided by 15 U.S.C. §§ 1116 and 1117.

**SECOND CLAIM FOR RELIEF**
**FALSE DESIGNATION OF ORIGIN**
**AND FALSE REPRESENTATION**
**(15 U.S.C. § 1125(a))**
**AGAINST ALL DEFENDANTS**

43.     Plaintiffs allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 42, as if fully set forth herein.

44.     The distribution, display and sale of counterfeit Moroccanoil Products by Defendants that are indistinguishable from authentic Moroccanoil Products and the diversion of genuine Moroccanoil Products constitutes a false designation of origin, false description and a false representation that the counterfeit products manufactured, distributed and sold by Defendants originate from, or are sponsored or authorized by Moroccanoil and that the diversion is sponsored and authorized by Moroccanoil.

45. The activities of Defendants in advertising, marketing and selling diverted and counterfeit Moroccanoil Products constitute a false designation of origin.

46. As a direct and proximate result of violations of 15 U.S.C. § 1125(a), Plaintiffs have suffered damages in the form of increased costs and reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to increase every day. Plaintiffs will amend their pleadings, at or before trial, to conform to proof to state the amount of their damages.

47. As a proximate result of their wrongful conduct, Defendants have been unjustly enriched. Plaintiffs demand and are entitled to an accounting from Defendants, including all information necessary to permit Plaintiffs to determine the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

48. Plaintiffs have no adequate remedy at law. Monetary compensation will not afford Plaintiffs adequate relief. The acts and omissions of Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult, if not impossible, to measure. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged, including infringement of the Moroccanoil Trademarks, Plaintiffs will

continue to suffer irreparable harm. Injunctive relief is therefore appropriate pursuant to 15 U.S.C. § 1116 to prevent Defendants from engaging in any further violations of 15 U.S.C. § 1125(a).

49.     Upon information and belief, the activities of Defendants complained of here constitute willful and intentional infringement of Moroccanoil Trademarks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1125(a). The willfulness of the infringement by Defendants is evidenced by the similar bottles, labels, wording, logos, and contents of the counterfeit products. The activities of Defendants are in total disregard of the rights of Plaintiffs. As a result, Plaintiffs are further entitled to damages as provided by 15 U.S.C. §§ 1116 and 1117.

### THIRD CLAIM FOR RELIEF
### COMMON LAW UNFAIR COMPETITION AND
### CONSPIRACY TO UNFAIRLY COMPETE
### AGAINST ALL DEFENDANTS

50.     Plaintiffs allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 49, as if fully set forth herein.

51.     Defendants use unfair trade practices to promote, and sell counterfeit Moroccanoil Oil Treatment in unfair competition with Plaintiffs.

52.     This common law unfair competition includes, but is not limited to, the following separate activities:

a.      the marketing and advertising of counterfeit Moroccanoil Products;

b.      the transporting and delivering of counterfeit Moroccanoil Products;

c.      the distribution and sale of counterfeit Moroccanoil Products;

d.      the marketing and advertising of diverted Moroccanoil Products;

e.      the transporting and delivering of diverted Moroccanoil Products; and

f.      other such acts of unfair competition.

53.     As a proximate result of Defendants' wrongful conduct, Defendants have been unjustly enriched. Moroccanoil demands, and is entitled to, an accounting from each of the Defendants, including all information necessary to permit Plaintiffs to determine the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

54.     As a direct and proximate result of the unfair competition and unfair business practices, Plaintiffs have suffered damages in the form of increased costs and

reduced revenue in an amount unknown, but not less than $500,000, and those damages will continue to increase every day. Plaintiffs will amend their pleadings, at or before trial, to conform to proof to state the amount of their damages.

55.    Plaintiffs have no adequate remedy at law. Monetary compensation will not afford Plaintiffs adequate relief. The acts and omissions of Defendants as alleged herein will engender the need for a multiplicity of judicial proceedings and will cause damages to Plaintiffs that are difficult, if not impossible, to measure. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts alleged Plaintiffs will continue to suffer irreparable harm. Injunctive relief is therefore appropriate to prevent Defendants from engaging in any further acts of unfair competition.

56.    The conduct of Defendants is fraudulent, malicious and oppressive. The Defendants have engaged in the illegal development, manufacture, transportation, delivery, distribution and sale of counterfeit Moroccanoil Oil Treatment. The conduct of Defendants is despicable. Their conduct subjects Plaintiffs to cruel and unjust hardship by which its rights are brazenly attacked and stolen. The conduct of Defendants is done willfully and Defendants engage in their misconduct in conscious disregard of the rights of Plaintiffs. Punitive damages should be awarded to punish Defendants and deter similar conduct in the future.

2522.004\9933

24

## PRAYER

WHEREFORE, Plaintiffs pray for an award as follows:

1.     Preliminary and permanent injunctive relief against all Defendants, and each of them, and their officers, agents, attorneys, representatives and assigns, and all persons acting in active concert or participation with them, from doing any of the following acts, either directly or indirectly, and from doing any act prefatory to the prohibited acts:

a.     Developing, manufacturing, marketing, advertising, acquiring, transporting, distributing, developing, offering to sell or selling any counterfeit bottles of Moroccanoil Oil Treatment product bearing counterfeit Moroccanoil trademarks;

b.     Using any of Moroccanoil's Trademarks, or any other Moroccanoil trademark in connection with their business, including but not limited to:

(i)     the word "Moroccanoil" (USPTO Registration No. 3,478,807 -- with a first use in commerce date of January 1, 2007);

(ii)    "M Moroccanoil Design" (vertical) - with the word Moroccanoil in white lettering written vertically with the letter M in orange written horizontally on the right side (USPTO Registration No. 3,684,910 - with a first use in commerce date of March 11, 2007); and

(iii)   "M Moroccanoil Design" (horizontal) - with the word Moroccanoil in white lettering written horizontally across the orange letter M (USPTO Registration No. 3,684,909 - with a first use in commerce date of March 11, 2007).

c.      Otherwise infringing the Moroccanoil Trademarks or any other Moroccanoil trademark;

d.      Causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of the goods of Defendants;

e.      Using any false designation of origin or false representation concerning any Moroccanoil product;

f.      Misrepresenting to anyone that they are authorized Moroccanoil manufacturers or distributors;

g.      Misrepresenting to anyone that they carry, distribute or sell genuine Moroccanoil Products or that they obtain their products directly from Moroccanoil;

h.      Any acts of unfair competition or unfair practice involving or affecting Moroccanoil Trademarks or any Moroccanoil product; and

     i.     Soliciting, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs "a" through "i".

2.     For an order directing Defendants, and each of them, to file with this Court and serve on Plaintiffs within 30 days after service of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

3.     For an order requiring Defendants, and each of them, to deliver to Plaintiffs:

     a.     all products, literature, and other material bearing any counterfeits of the Moroccanoil Trademarks or any other infringement of the intellectual property of Plaintiffs or which falsely identifies the source of any products; and

     b.     printing devices, labels, packing, bottles, advertising or any other items used in the manufacture, publicity, advertising or sale of products bearing any counterfeits of the Moroccanoil Trademarks.

4.     For a seizure of all counterfeit, diverted, repackaged, defaced, and damaged Moroccanoil goods and marks;

5.    For expedited discovery on the subject of the suppliers to, and purchasers from, Defendants of counterfeit Moroccanoil Oil Treatment products in order that Plaintiffs can quickly locate the source and locations of these illegal products;

6.    For damages and remedies as provided by 15 U.S.C. §§ 1116 and 1117;

7.    For damages and remedies as provided by 15 U.S.C. § 1125;

8.    For damages and remedies as provided by 19 U.S.C. § 1526;

9.    For damages according to proof and for all gains, profits, or advantages derived by Defendants by their unfair trade practices and unfair competition to the fullest extent allowed by common law, but not less than $500,000;

10.    For punitive and exemplary damages;

11.    For attorney's fees;

12.    For costs; and

13.    For such other and further relief as the Court deems just and proper.

Dated:  March 24, 2011              GOTTLIEB RACKMAN & REISMAN, P.C.


By: _____

By: Maria A. Savio (MAS 7756)
msavio@grr.com
270 Madison Avenue
New York, New York 10016
212-684-3900

Local Counsel for Plaintiffs
Moroccanoil, Inc. and
Moroccanoil Israel, Ltd.

Of Counsel:
CONKLE, KREMER & ENGEL

Mark C. Riedel
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403- 351
Phone: (310) 998-9100
Fax: (310) 998-9109

Maria A. Savio, (MAS 7756)
msavio@grr.com
Gottlieb, Rackman & Reisman, P.C.
270 Madison Avenue, 8th Floor
New York, New York 10016
(212) 684-3900
Local Counsel for Plaintiffs
Moroccanoil, Inc. and
Moroccanoil Israel, Ltd.

Mark C. Riedel (SB# 129205)
  m.riedel@conklelaw.com
(Appearing Pro Hac Vice)
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403-2351
Phone: (310) 998-9100 • Fax: (310) 998-9109
Counsel for Plaintiffs Moroccanoil, Inc.
and Moroccanoil Israel, Ltd.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOROCCANOIL, INC., a California corporation, and MOROCCANOIL ISRAEL, LTD., an Israeli limited company, | Civil Action No: 2:10-cv-06016-PGS(ESx) |
| Plaintiffs, | **CERTIFICATE OF SERVICE** |
| v. | |
| HARMON STORES, INC., a New Jersey Corporation; DLR DISTRIBUTION, INC., a Florida corporation; ROBELL GROUP, LLC. a New Jersey limited liability corporation; PRO HAIR SALES, INC. a New York Corporation; and DOES 1 through 10 inclusive, | |
| Defendants. | |
| HARMON STORES, INC., Third Party Plaintiff | |
| v. | |
| ROBELL GROUP, LLC, D.L.R. DISTRIBUTION, INC. and PRO HAIR SALES, INC., | |
| Third Party Defendants. | |

1

I hereby certify that a copy of the First Amended Complaint was served on March 24, 2011, by first class mail upon the parties listed below.

Andre K. Cizmarik, Esq.
Edwards, Angell, Palmer & Dodge, LLP
750 Lexington Avenue
New York, New York 10022

Kevin B. Faga, Esq.
Faga Savino LLP
399 Knoll Wood Road, Suite 301
White Plains, New York 10603

_____
Dahlia A. Bowie